Good morning, and welcome to the 11th Circuit. We're happy to have all of you here with us today. I think you're all familiar with our timing system, but I'll give a quick overview just in case. When the yellow light goes on, you have two minutes left. When the red light goes on, your time is up. We ask that you please stop at that time, unless of course we've asked you some questions, and if we have, we want you to go ahead and answer those questions. We are asking them because we want to hear the answers. But other than that, please do conclude when the red light goes on. All right, and with that, we'll hear first from Mr. Daley. May I please start? As an initial matter, I'd like to address Mr. Wynn's supplemental authority, United States v. Deeson. He says it forecloses Mr. Ostrander's second and first misconduct. It does not. In the Deeson case, the case agent described the three videos at issue, and then backed up his descriptions with screenshots. And that, the court said, was sufficient to place the material in context so that the jury could decide whether it had an interest and whether it had any socially redeeming value. That's far from what occurred in this case. The case agent, the government in general, actively refused to place the ten exhibits offered in evidence in any context. On cross-examination, I pressed the case agent, and he refused literally. I'm not going to provide my own context to the images. And indeed, he did not. On redirect examination, questioned by the prosecutor, he admitted that there was some relation to some of the drawings, but not all, just some. So Mr. Wynn doesn't have the facts to argue Deeson. And with that, I will entertain any questions. Hopefully, we have something more interesting to talk about. Well, just on that issue, I guess, obviously, I guess what you have to contend with is the standard of review, which is sort of stacked against you, right? You know, we've got to review the evidence in the light most favorable to the verdict. And, you know, you've got two people on the stand. And I agree, ten images out of 400 and something is not all that many. There's a risk of cherry picking. But is it, I mean, you know, can we really say that no could we really say, can we really say that no reasonable juror could convict? Well, no reasonable juror can apply the Miller test because those drawings are plucked out of multiple drawings. One is a long story. Another one is a short story. I think there's another one that's a story. There are a few of the images that relate only to a handful of images. Nonetheless, unlike videos, drawings typically evoke an emotion and they're intended to develop a message and make people think about something. It's not just something to be absorbed. And I think so when you're dealing with drawings, when you're dealing with a storyline, I don't think that you can really judge that and place it in any sort of context and decide the ultimate issue of whether or not there's any socially redeeming value. What I'd like you to help me with, counsel, is the argument that the statute is facially overbought and therefore unconstitutional. As I understand it, just to set the parameters of this discussion, there is no claim that as applied to your client, the statute is unconstitutional, right? That's correct. And you would agree that as applied to your client, it would be unconstitutional. First of all, he had the materials in his possession, that is to say, the cell phone, the laptop and the thumb drives, sitting in a Starbucks in a public supermarket. So there's no Stanley v. Georgia problem with regard to where and how he possessed these but that's why I just went with a facial. Okay, so help me with the facial overbreath challenge. As I understand the overbreath law, you can challenge it facially in two distinct ways. The first way, what I would call the usual method of the overbreath attack, is that the challenger must establish that no set of circumstances exists under which the law would be valid or else that the law lacks any plainly legitimate sweep. We can imagine because it seems to me it could be applied to your client and so I don't understand you to be making the first argument that is to say that there's no set of circumstances in which the statute could legitimately sweep. You're not saying that. Well, Stanley v. Georgia says that you can't outlaw possession of obscene materials. In the home, but the question I'm asking is, the statute could be applied to the possession of these materials in Starbucks in a public supermarket. So we can imagine at least some circumstance in which the statute would not be overproved in its application. You would agree with that? Well, Riley v. California, I think it is, the Chief Justice's opinion treats computer, cell phones, and electronic devices as someone's on an electronic device and I don't read that opinion as requiring that your electronic devices be kept in the home. I think as our technology has advanced, we have encryption and locks on our computers so you can't get into it. That's safer than your library in your house where a burglar could steal those. Right, but the problem is that Stanley v. Georgia, I'm not sure that Stanley v. Georgia goes beyond privacy in the home. That's really a home privacy case. But let's talk about the second method because that's what I took to be the heart of your argument here. That is to say that in the main, when looking at the text of the statute and the actual fact that substantial overbreath exists because there is a real and substantial danger that this statute sweeps so broadly that in the main it's going to sweep in and trench upon protected activity. Tell me why there's a real and substantial danger of that here. Nowadays we have a lot of people drawing and they use computers to draw their own material. It limits what they could draw but more than that it subjects what they draw to public scrutiny when that scrutiny was not invited. One of the reasons why Stanley v. Georgia, I believe that's pertinent to this argument, is that our obscenity laws work fine when you're talking about with someone else. But I have a hard time wrapping my head around the idea that a drawing that you don't intend to show to somebody can be subjected to judgment because it's found. Right, and we might be able to agree about a drawing in a home done for the privacy of the person within his home, but if the statute were actually applied and someone were prosecuted for making a dirty drawing in his bedroom, you would have little doubt that you could defend as applied, right? So what I'm asking is whether there's a realistic and substantial danger that this statute is going to be used to prosecute people who are doing doodles in their bedroom or in their living room. Is that really what this statute is getting at and is that really the risk that we're concerned about here? Because after all we're talking about overbreath when as applied to your client it isn't overbroad. So you were trying to carry the coals to Newcastle for Why is there a serious danger that this statute is going to be used to prosecute people who make drawings in their own home? The drawing might be made in their own home. It's usually put on a computer. There are rendering programs that allow you to make a story. You put that on your computer and then you feel free to carry your computer, your laptop with you everywhere you go. You're stopped for one reason or another. Your laptop is searched and now you're in trouble. It's not much different from being in your home and there's a substantial danger. People treat their laptops as their library, as their file system. And the law as it's written makes no exception for doing things in your home. It doesn't say you can't possess it unless it's in your home. You can't draw it unless it's in your method. The law as it stands doesn't allow for the possession that Stanley would. There's a lot of reasons why people might want to draw, challenge themselves, or have some other intent other than pedophilia. So I think you're essentially trying to govern what people think and how they think and you're eliminating drawing from that thinking process as it relates to service. Thank you. All right. Thank you, Mr. Daly. And we will hear now from Mr. Nguyen. Good morning, Your Honors, and may it please the Court. Conrad Nguyen for the United States. Mr. Ostrander's sufficiently proven and constitutional conviction under Section 1466 AB1 should stand. His facial overbreadth challenge under the First Amendment lacks all merit and the government introduced sufficient evidence at trial for a reasonable jury to find beyond a reasonable doubt that the images at issue here were in fact obscene. I guess in fairness, with respect to the first point you make that the facial overbreadth challenge lacks all merit, your theory as to why has pretty radically changed pretty recently, right? I mean, in the supplemental brief, you say, to your credit, we misspoke in the brief. We were wrong about that, but we're right in any event for this new reason. Certainly. I want to be clear that Stanley v. Georgia is grounded in the First Amendment, but I want to explain the legitimate sweep of this statute and then compare what is clearly constitutionally permissible and then have on... We're going to take a moment here, just a moment. Okay. All right. Okay. Do you want to just say what your question was again? So the question was basically, just with respect to the First Amendment argument, your theory has changed, right? The brief was that Stanley has nothing to do meaningfully with the First Amendment. It's really a sort of a Fourth Amendment or privacy kind of case. In the supplement, you say, no, no, no, Osborne... Just a moment. How are we doing? It's okay. It's not your fault. Let's see if we can get these to work. Actually, this problem is more than a problem. Well, I can help with that testing. Could you please be shorter? Yeah. I think what you want to do is speak loudly right into that microphone so everybody can hear you. Thank you. Happy to do that. And let me just, if we could, why don't we start his time over. We'll start from the beginning and then we can make sure if you have any problems. No, please just let me know. We want to make sure that you're able to hear the argument. All right. Are you able to hear when I speak into the microphone? Okay. Okay. All right. So the question that I had asked is, government's lawyer says your facial overbreath challenge fails for any number of reasons. And I said, in fairness, the theory, the government's theory for why it fails has changed. In the supplemental brief, you sort of shift theories. You've now heard me ask the question three times. All right. So explain to me under your new theory why it is that the facial overbreath challenge fails. Sure. So I think in evaluating a First Amendment substantial overbreath challenge to this statute, the first thing to do is consider the statute's plainly legitimate reach. And I want to do that by walking through how the statute operates. So it punishes the knowing possession of visual depictions depicting a minor, whether real or virtual, engaged in sexually explicit conduct, so long as that the images themselves are obscene under the standards laid out in Miller v. California. So a couple of things about that and to show generally how things are going to be constitutional when prosecutions under this statute are brought. First, any images that can give rise to criminal liability have to be obscene, meaning that they fall without outside the ambit of the First Amendment. Not only that, the statute contains a knowing scienter requirement, and it also punishes only that category of conduct that is sexually explicit conduct as defined in 2252. Now, I would note those last two points I made, the scienter and statutory definition, those both proved relevant in the Supreme Court's decision in United States v. Williams in rejecting an overbreath challenge to an obscenity statute much like this. Let me ask you a question, sort of a practical question, and that is, you know, the Supreme Court has said that what somebody does in the privacy of their own home, as long as they're not using interstate facilities, whatever, is their own business and we can't, you know, it's a violation of the First Amendment to charge someone criminally for that. And, of course, the Supreme Court said this at a point in time when computers were not omnipresent. Your colleague on the other side of the aisle makes the point that some people might just do drawings on their computers just for their own personal use, in their own homes, and it would be as if they had done them by hand, but because of the advent of the computer, now they do it on the computer. I mean, doesn't it seem like perhaps as long as they don't send those images anywhere, don't share them, don't distribute them, how is that any different from just drawing them by hand? And isn't that a problem with the statute? So a couple of points on this. I think if the computer or electronic device never left the home, maybe Stanley would reach the computer in that themselves are often portable these days and can be carried outside the home. Once obscene material located on an electronic device leaves the home, Stanley doesn't apply on its own terms, right? The obscene material is no longer in the home. I also want to offer a couple other points about this. I'm sorry, let me just, before you do that, so obviously this is not the Stanley scenario, but let's say a person draws the picture, puts it in their briefcase, doesn't distribute it anywhere, doesn't share it with anybody, but for whatever reason, wants to carry it with them, maybe wants to look at it, they're going to a hotel or something, I don't know. But they happen to get stopped for whatever reason, the briefcase is searched, it's found, is there then a problem under the First Amendment? No, Your Honor, and I think that's because Stanley v. Georgia has been cabined and understood by the Supreme Court and this numerous decisions since it was handed down to apply only within the context of the home. So if someone takes obscenity outside the home, no, the First Amendment offers them no protection. Of course, the argument your colleague makes goes right to that question. The statute itself reads as follows. I'm talking about 1466 AB. It criminalizes the knowing possession of, and I quote, a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting that depicts a minor engaging in sexually explicit conduct and is obscene. I have that right, do I not? Yes, that's correct. So let's use the first example that your facially overbroad to the extent it was used to prosecute somebody for doing a drawing by hand in his home. Didn't take it with him outside of the home, didn't put it on a computer that he might have made portable, but actually made a drawing or a painting or a cartoon in his home. Didn't take it out of the home. Wouldn't Stanley v. Georgia protect him under the First Amendment? And if the answer is yes, then you would have to concede, would you not, that at least in some applications, the statute would be overbroad. So, Your Honor, I think it's an open question in the terms of this case, and let me explain why Stanley v. Georgia specifically concerned obscenity depicting adults engaged in sexual activity. What we have here is something different. It is child obscenity. The Supreme Court's recognized that Stanley was only about consenting adult material. It specifically notes that in United States v. Williams in a line, it characterizes Stanley in that way. And in fact, it has a compare citation between Osborne v. Ohio and Stanley v. Georgia that makes clear that Stanley is limited to the context of adults. It's an open question that courts have generally not decided whether the fact that there's child obscenity might change the constitutional calculus. Although some courts have talked about it a little bit. I mean, you know, courts have said, for example, that the reason why child pornography involving, obviously, real children is criminalized is because there are victims, there are child victims, they continue to be victimized throughout their lives by the existence and trading of this stuff. But in a situation where you're talking about drawings, you don't have that same situation. I mean, there might be other arguments like maybe it might be connected with people going beyond that and going to real child victims, but there hasn't been evidence sufficient to establish that at this point, the courts have said. So it seems a little bit different, doesn't it? I agree with you. It's not. And I want to be clear. So there are two separate exceptions to the First Amendment that are relevant here to think about. There's the child pornography exception, where even if one possesses child pornography in the home, and that is images depicting actual minors engaged in sexual activity, there is no First Amendment protection. Stanley is uniquely concerned with the possession of obscenity, which is a separate category of And what we're confronting here is kind of the space in between Stanley and Ferber, where we have not just obscenity depicting adults, nor do we have child pornography depicting real minors. What we have here is obscenity depicting virtual minors. It's kind of falling within the space between these two decisions. Help be what we do with Ashcroft v. Free Speech. Supreme Court's said a whole lot since Stanley. It made it clear in Osborne that Stanley would not protect you with regard to images, real images of real children and child pornography. And then in Ashcroft, in 2002, the Supreme Court again has to grapple with this problem. Did it not hold in no uncertain terms that the concerns about child pornography that it had expressed in Osborne did not apply to virtual child pornography precisely because the danger of having children abused didn't appear if it was purely virtual? That's correct. But I do want to lay some context for Ashcroft. Ashcroft specifically dealt with a statute that didn't limit material that is deemed obscene under the First Amendment. In fact, this statute, 1466A, was amended by Congress after the Ashcroft decision specifically to impose that limitation to make sure that materials being punished by this statute would fall outside the excerpt of the First Amendment. I would also note that in Justice Kennedy's majority opinion in Ashcroft at the beginning, he says that it's an open question that the slightly different in the context of child pornography. Let me put the question directly to you. Do you believe that you could constitutionally prosecute using this statute someone who made a drawing, an image that was child pornography, if you will, in the confines of his home, didn't share it outside of the home, didn't distribute it outside of the home, didn't even use his computer to fashion the image? But he drew a painting. Could you prosecute that guy in the confines of his home, consistent with Stanley v. Georgia? So as long as the material is obscene, it's the government's position that it could because child obscenity is different from adult obscenity for purposes of the First Amendment and Stanley. And you think Ashcroft doesn't shed any light on that problem? I don't because Ashcroft did not involve materials that were obscene within the meaning of the First Amendment. The statute reached beyond that. Can I ask you a question about how it is that we conduct the facial overbreath analysis? So I guess it's like a denominator problem question. So the statute as I read it says, you know, any person who in a circumstance described in subsection D. So if you flip over to subsection D, it seems to me it says, you know, sort of possesses, that's an A, depictions that themselves have been shipped or mailed or that have been created using things, computer, you know, sort of parts that have been shipped or mailed. Do we view in conducting this overbreath analysis, which really is just a comparison of valid to invalid applications at some level, the valid applications, do those include exchange in effect? I mean, the statute seems to criminalize possessed materials that themselves have been exchanged. Is that part of the denominator? And if so, that, I don't know, it seems like that vastly increases the number of valid applications of the statute. This is important. And United States v. Hansen gets to the point that when looking at the unconstitutional applications in relation to the valid ones, it needs to be lopsided for an overbreadth challenge to succeed. And what you're getting at, I actually think that might go to the numerator part here, but I'm happy to talk about what I'll call the numerator and the denominator of the statute. So the point really here is that even assuming arguendo that you couldn't prosecute somebody for a doodle in his bedroom that might otherwise fit all these definitions because it was protected by Stanley, that's so remote, so insubstantial, and so unlikely that in the main, the statute's use would be constitutional and therefore the void for overbreadth challenge would have to fail. Isn't that really the heart of your argument? And just to be clear, that's not exactly the point that I'm trying to make. I'm not saying necessarily that the invalid application is totally speculative and fanciful. Let's assume it's not. Let's assume that the invalid application of this statute to true blue Stanley in the home consumption, fine. But the statute as I read it reaches a whole lot of other things because of the cross-reference to D, which includes exchanged materials. So I'm interested in that universe of valid applications. Can I consider that or do I just have to consider sort of things closer to the Stanley paradigm? Right. So all this is to get to, I actually don't think the court even needs to decide whether applying this statute in a manner similar to Stanley would actually present a true constitutional problem because even if it did, it's just not going to be enough to render a substantial number of applications of this statute, such as a lopsided result that's overbroad. And I'm going to walk back and explain both of these things at this point. So let's start with the denominator of this statute. It applies to both actual and real children. It could equally be used to prosecute visual depictions of them both. And the actual children are automatically going to be constitutional applications because that material will be child pornography, which is entitled to no first amendment protection. Automatically, half of the statutes reach clearly and patently constitutional. So let's move to the other half of the statutes reach, which is patients of virtual children. Now, in that case, the depiction is going to have to be obscene. It's going to have depict sexually explicit conduct, which is to be clear, hardcore pornography, basically, as defined in Title 18 U.S.C. Then going beyond that, the defendant is going to have to knowingly possess the material. He also has to have at least a mens rea of recklessness and perhaps knowledge as to the fact that the materials themselves are obscene. You can see that from the Supreme Court's discussion in Counterman v. Colorado last year, where it was talking about the mens rea requirements going to obscenity in particular. Then we start to get to what to Judge Newsom is talking about and how the jurisdictional nexus in 1466 A.D. actually works to limit even any potential Stanley problem here because the statute can only punish knowing possession in one of the circumstances listed in subsection D. And by and large, they refer to materials that have been transmuted through interstate instrumentalities or commerce or communication or transportation. I'm not to say that there is never going to be a case where an as-applied Stanley challenge is going to pose a close question, maybe, although for the reasons that I've given, the government thinks that even then we could prosecute that conduct under this statute. But a narrow subset of cases is by no means producing a lopsided and disproportionate result that would suffice to invalidate the statute under the First Amendment over breadth. Let me ask you a question. Has this statute, to your knowledge, ever been used? And I can't find a case that says it has been to prosecute somebody for drawing a painting of this kind in a home. I've never found a case of that kind. And, you know, to the extent that it's a drawing or painting, number one, we're going to have to show it's obscene and that's going to knock off a huge number of drawings and paintings in the home. So would it be fair to say that that example is really insubstantial, if not utterly idle and fanciful? But it hasn't happened to the best of your knowledge. But I'm just focusing on the test that there's a real and substantial risk that this statute will be used to trench on what may arguably be protected conduct. And if I hear you right, and help me if I have it wrong, that the statute has never been used in that way. Not as far as I am aware. If your honors don't have any further questions about the First Amendment implications, I do think we should talk about the sufficiency, if I could have a bit of time. Well, I'm sorry, but I think your time has run. Could I indulge for one moment, Madam Presiding Judge, and ask just one question in that regard? Help me with the evidence, and particularly as I looked at the record, there was this 5G piece of evidence that by everyone's account was a standalone image. Wasn't part of any story, any anything, right? I think that's true. It was just 5G through 5J, yes. How many were those, of the ten? That would be four of the ten. There is simply no question that they are standalone. Thank you. All right. Thank you, counsel. Mr. Daley, you've reserved seven minutes. There's just a couple of things, or a few things that I'd like to follow up on, and that is that Mr. Wynn is clinging to Judge Scalia's opinion in Williams that set forth the standard of analyzing a First Amendment challenge. As I read the law today after Bruin, which in part was inspired by Stevens, the Chief Judge's opinion in Stevens, the analysis of what a challenge is brought to a statute under the First Amendment is, first, does it infringe on First Amendment rights? In this case, yes. Is there a historical precedent at the founding of this nation that would allow that regulation? And I'll mention that in Stanley, Thurgood Marshall adopted Brennan's historical analysis in Roth and noticed that there's, later than the founding, there was regulation with regard to distribution. But during the colonial and founding era, there was no regulation and there never was regulation of possession. People were not restricted. And so the original understanding of the First Amendment that now we're told to concern ourselves with did not invite regulation of people's drawings. And there were a lot of drawings and there weren't any photographs. If you were going to publish obscenity, it was going to be a drawing and you were going to hand it out. And if you didn't, no one cared. So let me ask you this. Obviously, we've got a lot of, as middle managers, we've got a lot of 1791 and now, right? So we've got this over-breadth doctrine of the facial challenge that you've brought. What is your response to my question about the cross-reference to subsection D that seems to extend the reach of this statute, not just to what I'll call the pure Stanley situation, but also to lots of exchanges? And if there are so many exchanges that likewise are prohibited by the statute, why does that not increase the denominator so much that the relatively infrequent Stanley prosecution can't facially invalidate this statute? Well, certainly this prosecution was brought because it existed on an electronic device that had moved in interstate commerce. All the drawing has to do is exist on a computer. And jurisdictional requirement is satisfied. A piece of paper in a home, I don't believe, could be prosecuted under this statute because it lacks jurisdiction. So... But I mean, I think Judge Newsom's question goes to yes, conceding that a piece of paper in a home, even if we agree for purposes of this argument, couldn't be prosecuted because it didn't travel in interstate commerce, presumably. That is just one small fraction of applications under this statute. And in over-breadth challenges under the First Amendment, when it's so de minimis, the conceivable unconstitutional applications, the Supreme Court has told us that those challenges fail. And so I guess the thought is if you wanted to address the very small number proportionally of applications that would arguably be unconstitutional compared to what seemed like the much larger proportion of applications that wouldn't. Well, I would answer that we don't have enough experience with this statute because the prosecution is under this statute. It's very rare. If we have distribution, if we have possession with intent to distribute, it's not going to be prosecuted under 1466A. A-1 with intent to distribute. And it more likely will be prosecuted under 2252. But would you acknowledge that B-1, by virtue of the cross-reference to B, does criminalize possession of images that themselves have been mailed, shipped, or transported? B-1, any person who in a circumstance described in subsection D, right? Right? Okay, so you look at subsection D, and one of the prongs of subsection D says it criminalizes the possession of images that themselves, forget about the computers, but themselves have been mailed, shipped, or transported in interstate commerce. Is that an invalid application of B-1 to prosecute people for possessing images that themselves have been exchanged in interstate commerce? I think that's one way that jurisdiction could be applied in this particular instance. It was suggested that the images on the thumb drive had moved in interstate commerce, but the government was not enthusiastic about proving that. It said that it was on a computer, and that was sufficient to establish jurisdiction. And it is. The other thing that I'd like to mention is that I'm quite on the precept of standing to rest on privacy concerns, and that is that things being in the home, because homes often have to move, and so something doesn't necessarily have to be in the home. There has to be a privacy interest, and I think we have privacy interest nowadays in our computers sufficient to invoke the possession, exclusive possession, and you can't look at my stuff unless you have a search warrant. Thank you very much, counsel, and I note that you were CJA appointed. We very much appreciate your taking this case and handling it so ably. Thank you, counsel.